IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 13-219V

(Originally Filed: June 3, 2014)
(Reissued: June 17, 2014)

| | | |
|---|---|---|
| INA SCANLON, | ) ) | Vaccine case; receipt of varicella zoster ("shingles") vaccine, request for award |
| Petitioner, | ) ) ) | of attorneys' fees and costs; 42 U.S.C. § 300aa-15(e)(1); petition brought in good faith and upon a reasonable basis |
| v. | ) ) | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) | |
| Respondent. | ) ) | |

David Porter Murphy, Greenfield, Indiana, for petitioner.

Linda S. Renzi, Senior Trial Counsel, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the brief were Stuart F. Delery, Assistant Attorney General, Rupa Bhattacharyya, Director, Vincent J. Matanoski, Deputy Director, and Catharine E. Reeves, Assistant Director, U.S. Department of Justice, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Ms. Ina Scanlon filed a petition for compensation after suffering injuries from receipt of a varicella vaccine.[1] The special master denied compensation on the basis that the particular varicella vaccine she received was not a covered vaccine under the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 to -34. *Scanlon v. Secretary of Health & Human Servs.*, No. 13-219V, 2013 WL 5755061 (Fed. Cl. Spec. Mstr. Sept. 27, 2013). This court upheld that decision upon Ms. Scanlon's motion for review. *Scanlon v. Secretary of Health & Human Servs.*, 114 Fed. Cl. 136 (2013). Ms. Scanlon subsequently filed an application for attorneys' fees and costs, which the special master denied. *Scanlon v. Secretary of Health &*

---

[1]*See* Mayo Clinic Report for Ina Scanlon, Pet'r's Ex. 4, at 4, ECF No. 7-5 ("Ms[.] Scanl[o]n appears to have chronic I[mmune ]T[hrombocytopenia] that seems to have been triggered by varicella immunization.").

*Human Servs.*, No. 13-219V, 2014 WL 1286563 (Fed. Cl. Spec. Mstr. Mar. 10, 2014). Ms. Scanlon's motion for review of the decision denying fees is now before the court.

## BACKGROUND[2]

On April 1, 2010, Ms. Scanlon received a varicella vaccine specifically designated for use in preventing shingles. *Scanlon*, 114 Fed Cl. at 137. Within two months, she began suffering from a viral infection that caused her platelet count to drop from approximately 209,000 to 6,000. *Id*. Her physician concluded that the infection was caused by the vaccine. *Id*. Ms. Scanlon continues to suffer from inconsistent platelet counts and immune thrombocytopenia, which is characterized by excessive bleeding and dangerous bruising. *Id*. On March 28, 2013, Ms. Scanlon filed her petition for compensation under the Vaccine Act. Extensive medical records were filed on May 7, 2013. *See* Pet'r's Exs., ECF Nos. 6, 7, and 8. An initial conference was held by the assigned special master on May 13, 2013, at which the special master and counsel for the parties addressed future proceedings focused on the merits of Ms. Scanlon's claim. Shortly thereafter, on May 20, 2013, Ms. Scanlon completed the submission of her medical records. *See* Pet'r's Exs., ECF Nos. 11, 12, and 13. Three and one-half months later, on September 5, 2013, the government filed a motion to dismiss for failure to state a claim upon which relief can be granted, ECF No. 17, based on the fact that the shingles vaccine, unlike the varicella vaccine used to prevent chicken pox, does not appear on the Vaccine Injury Table.

The Vaccine Injury Table (or "the Table") is a regulatory listing of the vaccines included in the compensation program. *See* 42 C.F.R. § 100.3. If a vaccine does not appear on the Table, no compensation can be provided for adverse effects resulting from its receipt, *i.e.*, it is not a "covered vaccine." *See Scanlon*, 114 Fed. Cl. at 140; *Charette v. Secretary of Health & Human Servs.*, 33 Fed. Cl. 488, 491 (1995). Pertinent to Ms. Scanlon's petition, the Table lists "varicella vaccine." 42 C.F.R. § 100.3(a) (Table, item X). Both the chicken pox vaccine (under the brand name Varivax) and the shingles vaccine (under the brand name Zostavax) contain live attenuated varicella zoster virus, though in different concentrations. *See Dorland's Illustrated Medical Dictionary* 2017 (32nd ed. 2012). In her petition, Ms. Scanlon took the position that the shingles vaccine was included within the listing of "varicella vaccine." *Scanlon*, 114 Fed. Cl. at 137-38; Pet'r's Pet. ¶ 13, ECF No. 1. Ultimately, the special master determined that only the chicken pox vaccine was encompassed by the term "varicella vaccine" as it appears on the Table. *See Scanlon*, 114 Fed. Cl. at 137-38.

Ms. Scanlon filed a motion for review in this court of that decision. As a preliminary matter, the court confirmed that it had jurisdiction to determine whether the varicella vaccine used to prevent shingles was included on the Vaccine Injury Table. *Scanlon*, 114 Fed. Cl. at 139.[3] The court recognized that the regulatory language "varicella vaccine" on its face

---

[2]The stated facts were derived from Ms. Scanlon's petition and her medical records. *See Scanlon*, 114 Fed Cl. at 137. No material facts appear to have been in dispute.

[3]The government has renewed its assertion that the court does not have subject matter jurisdiction over Ms. Scanlon's claim. Resp't's Mem. in Resp. to Pet'r's Mot. for Review ("Resp't's Opp'n") at 2-3, ECF No. 38. That jurisdictional position was presented initially to

encompasses both the shingles and chicken pox vaccines because both contain different concentrations of the same varicella-zoster virus. *Id.* at 142. Inquiry beyond the language of the regulation itself was thus required to determine whether the shingles vaccine was a covered vaccine notwithstanding this ostensible inclusion. *See id*. at 140-41. Specifically, the court looked to the funding scheme for the Vaccine Act, as well as the specific application and intended use of the shingles vaccine as contrasted to the chicken pox vaccine. *Id.* at 142. The court observed that the program is limited to compensating individuals who have been injured by vaccines routinely administered to children, and the program is funded by excise taxes placed on those covered childhood vaccines. *Id.* at 140-41.[4] Such an excise tax is imposed on the chicken pox vaccine but not the shingles vaccine. *Id.* at 142. Additionally, the court found that the shingles vaccine and chicken pox vaccines cannot be used interchangeably. *Id*. Notably, the shingles vaccine cannot be used to prevent primary varicella infection (chicken pox) and should not be given to children or adolescents. *Id*. Consequently, the court upheld the special master's decision, holding that the term "varicella vaccine" on the Vaccine Injury Table was intended only to encompass the chicken pox vaccine and not also the shingles vaccine, despite the breadth in its wording. *Id*. In addition to these findings and conclusions, the court noted that several prior petitions for compensation for injuries resulting from administration of the shingles vaccine had been denied by a particular special master. *Id.* at 142-43.

Thereafter, Ms. Scanlon submitted an application for attorneys' fees pursuant to the Vaccine Act. *See* 42 U.S.C. § 300aa-15(e)(1). Ms. Scanlon's counsel requested $11,919.62 in statutory fees and costs. *Scanlon*, 2014 WL 1286563, at *1. The government opposed this request, believing that the petition lacked a "reasonable basis," as required by the pertinent fee-shifting provision of the Vaccine Act, because Ms. Scanlon's claim sought damages attributed to a vaccine not covered under the Vaccine Act. *Id.*, at *2. Nonetheless, the government did not oppose the requested amount if the special master were to conclude that the petition had a

---

this court on review of the special master's decision on the merits. *See Scanlon*, 114 Fed. Cl. at 138-39 ("The government's argument — that the shingles vaccine is not a covered vaccine and thus that Ms. Scanlon cannot receive compensation for her resultant injuries — was presented to the special master as a challenge to the merits of Ms. Scanlon's claim and not as a challenge to this court's subject matter jurisdiction. The government has now, however, shifted its position on jurisdiction . . . .") (internal citation omitted). This court expressly disagreed that the special master's decision was premised on a lack of jurisdiction, but, to avoid any confusion, explicitly held that the court had jurisdiction over Ms. Scanlon's claim. *Id*. at 139 ("This court has subject matter jurisdiction to determine whether a vaccine is included on the Vaccine Injury Table.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006), and *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011)). Accordingly, decisions by special masters that rely on lack of subject matter jurisdiction as a basis for rejecting motions for statutory fees, *see, e.g.*, *Nutt v. Secretary of Dep't of Health & Human Servs.*, No. 10-862V, 2011 WL 976675, at *2 (Fed. Cl. Spec. Mstr. 2011) (citing *Brice v. Secretary of Health & Human Servs.*, 358 F.3d 865 (Fed. Cir. 2004)), are inapposite to this case.

[4]The addition of a covered vaccine to the Vaccine Injury Table only becomes effective upon the effective date of a tax enacted to provide funds for compensation. *See Scanlon*, 114 Fed. Cl. at 137 n.2 (citing 42 U.S.C. § 300aa-14 note (Revisions of Vaccine Injury Table)).

3

reasonable basis. *Id.* On March 10, 2014, the special master denied Ms. Scanlon's application for attorneys' fees after determining that there was no reasonable basis for her claim. *Id.* at *2-*3. The special master faulted Ms. Scanlon's counsel for filing a claim regarding the Zostavax vaccine when a search of prior decisions by a particular special master would have revealed that three other such claims had been denied. *Id.* at *3. The special master looked to decisions denying attorneys' fees where petitioners' attorneys had failed to "make fundamental inquiries about the case," and concluded that "[r]easonable basis is absent when petitioners bring claims for vaccines not listed on the Vaccine Injury Table." *Id.* (internal citations omitted).

On April 3, 2014, Ms. Scanlon filed a motion for review of that decision, and, after the government filed its response, the court held a hearing on May 22, 2014.

## STANDARDS FOR REVIEW

The Vaccine Act provides that the Court of Federal Claims has jurisdiction to review decisions of special masters and may overturn a special master's decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 300aa-12(e)(2)(B). A special master's findings of fact are reviewed under the deferential arbitrary and capricious standard, *Lampe v. Secretary of the Dep't of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000), her legal conclusions are reviewed *de novo*, *Saunders v. Secretary of the Dep't. of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994), and her discretionary decisions are reviewed for abuse of discretion, *Munn v. Secretary of the Dep't of Health & Human Servs.*, 970 F.3d 863, 870 n.10 (Fed. Cir. 1992).

The Vaccine Act provides that a court may award attorney's fees and costs incurred by a petitioner in pursuing an ultimately unsuccessful vaccine-injury petition, if that petition "'was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.'" *Sebelius v. Cloer*, 569 U.S. __, __, 133 S. Ct. 1886, 1890 (2013) (quoting 42 U.S.C. § 300aa-15(e)(1)).[5] The decision whether a particular petition was brought in good faith and had a reasonable basis at the time of filing, and therefore that counsel would be entitled to attorneys' fees, is within the discretion of the special master and is generally reviewed for abuse of discretion. *Davis v. Secretary of Health & Human Servs.*, 105 Fed. Cl. 627, 633 (2012) (citing *McKellar v. Secretary of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011)) (*in turn citing Saxton v. Secretary of the Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520) (Fed. Cir. 1993) ("The determination of the amount of reasonable attorneys' fees is within the special master's discretion.")). A review of whether an award of fees is statutorily permissible, however, is a legal determination subject to *de novo* review. *See Cloer*, 569 U.S. at __, 133 S. Ct. at 1890 (reviewing *de novo* whether an untimely petition can have a reasonable basis for purposes of awarding fees); *Saunders*, 25 F.3d at 1033 ("The issue before us on appeal is whether the special

---

[5]The statute further provides that "[n]o attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court under [Section 300aa-15(e)(1)]." 42 U.S.C. § 300aa-15(e)(3).

master's award of attorneys' fees and costs was permissible under the [Vaccine] Act. . . . Thus, we review the special master's award de novo . . . .").

In this particular case, the special master's decision is one of mixed law and fact. First, there is a preliminary legal question whether attorneys' fees may be granted in a case where a petition was filed regarding a vaccine that is ostensibly listed on the Vaccine Table but later determined not to be covered. Second, the question arises as to whether the special master abused her discretion in finding that in this particular case the petition had no reasonable basis at the time of filing. This court may find an abuse of discretion where the special master's decision

> (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [her] decision.

*Ninestar Tech. Co. v. International Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012) (quoting *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997)).

## ANALYSIS

The government concedes and the special master acknowledged that the petition was filed in good faith. *Scanlon*, 2014 WL 1286563, at *2. The denial of fees was based upon the special master's finding that the petition lacked a reasonable basis. *Id.* at *3. The presence of a reasonable basis "is an objective consideration determined by the totality of the circumstances." *McKellar*, 101 Fed. Cl. at 303. That totality encompasses any jurisdictional questions, the factual basis and medical support for the petition, any legal issues that arise, and the circumstances under which the petition was filed. This latter consideration includes a temporal assessment – a petition that had a reasonable basis at the time of filing may not continue to have a reasonable basis throughout its pendency. *See Perreira v. Secretary Dep't Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (confirming a special master's decision to award attorneys' fees only until the point in time when it was evident there was no longer a reasonable basis for the petition).

Here, the court must first determine whether a petition can ever have a reasonable basis if it seeks compensation for injury caused by a vaccine that is later held to be not on the Vaccine Injury Table. The special master's opinion suggested it cannot, *Scanlon*, 2014 WL 1286563, at *3 ("Reasonable basis is absent when petitioners bring claims for vaccines not listed in the Vaccine Injury Table."), but this case is hardly as clear cut as the special master postulated. The purpose of the fee-shifting provision is to "ensure that vaccine-injury claimants will have readily available a competent bar to prosecute their claims under the [Vaccine] Act." *Saunders*, 25 F.3d at 1035. In the Supreme Court's view, "[a]ttorney's fees are provided [under the Vaccine Act], not only for successful cases, but even for unsuccessful claims that are not frivolous." *Bruesewitz v. Wyeth LLC*,

5

562 U.S. _, _, 131 S. Ct. 1068, 1074 (2011).  In *Cloer*, the Supreme Court held that despite a three-year statute of limitations in the Vaccine Act, which commences at the onset of an injury or the significant aggravation of a pre-existing injury, a petition filed outside that window may still have a reasonable basis if the petitioner reasonably believed their vaccine-related symptoms began within the limitations period.  569 U.S. at __, 133 S. Ct. at 1895.  The Court held that the fee-shifting provision should be interpreted broadly and stated that "[i]f Congress had intended to limit fee awards to timely petitions it could easily have done so."  *Id*. at __, 133 S. Ct. at 1893.  The government had argued in *Cloer* that the untimely petition had not actually been "filed" within the terms of the statute, and was thus ineligible for attorney's fees, because the statute states that "'no petition may be filed for compensation' 36 months after a claimant's initial symptoms began."  *Id.* at __, 133 S. Ct. at 1893 (quoting 42 U.S.C. § 300aa-16(a)(2)).   The Supreme Court rejected that argument for two reasons.  First, the fee-shifting provision, 42 U.S.C. § 300aa-15(e), does not incorporate the statute of limitations found at 42 U.S.C. § 300aa-16(a)(2).  569 U. S. at __, 133 S. Ct. at 1893-94.  Nor does the Act's provision that governs when a petition shall be deemed "initiated," *i.e.*, filed, 42 U.S.C. § 300aa-11(a)(1), refer to the statute of limitations, 569 U.S. at __, 133 S. Ct. at 1893-94.  Second, the government's position was "inconsistent with the goals of the fees provision itself. . . .  The [g]overnment does not explain why Congress would have intended to discourage counsel from representing petitioners who, because of the difficulty of distinguishing between the initial symptoms of a vaccine-related injury and an unrelated malady, may have good-faith claims with a reasonable basis that will only later be found untimely."  *Id.* at __, 133 S. Ct. at 1895 (internal citations omitted).  The Supreme Court opined that special masters would be "more than capable of discerning untimely claims supported by good faith and a reasonable basis from those that are specious."  *Id.* at __, 133 S. Ct. at 1896.

Similarly, in this case, the court will not presume that Congress intended to bar attorneys' fees awards to those who represent petitioners who have a reasonable basis for believing they received a covered vaccine but are ultimately held to have received an uncovered vaccine.  The same textual and contextual arguments as in *Cloer* support a finding that a petition could have a reasonable basis at the time of filing even if the vaccine is later found not to be included on the Vaccine Injury Table.  Despite a good faith initial belief that she had received a "varicella vaccine" within the meaning of the Vaccine Table, the special master and then the court ruled that Zostavax was not such a "varicella vaccine."  The court recognizes that it will be a rare case in which there is a credible question over whether a petitioner received a covered vaccine, but this may be just such a case as a legal matter.

Second, after determining that in some circumstances a petition relating to a vaccine ultimately found not to be covered by the program can have a reasonable basis, the court looks to whether Ms. Scanlon's petition in particular had a reasonable basis.  In this instance, the special master placed great weight on the fact that three prior decisions, all by the same special master, denied compensation in cases involving Zostavax because it was not listed on the Vaccine Table.  *See Scanlon*, 2014 WL 1286563, at *3.  In the special master's view, this should have alerted counsel to the unavoidable futility of

6

Ms. Scanlon's claim, and thus, there was no reasonable basis for her claim. *Id*. This court disagrees that the existence of these prior decisions, without more, renders Ms. Scanlon's petition unreasonable and finds that the special master abused her discretion in holding otherwise.

      Most importantly, the language of the vaccine table on its face indicates that any varicella vaccine is covered. Both the shingles vaccine and chicken pox vaccine are varicella vaccines, and the Table states "varicella vaccine" without qualification. *See* 42 C.F.R. § 100.3 (Table, item X). In arriving at a conclusion that the reference in the Vaccine Table could not be taken at face value, the court was required to inquire into the statutory history of the Vaccine Act and the regulatory history of the varicella listing on the Table. *See Scanlon*, 114 Fed. Cl. at 142. Only Varivax is used to prevent primary varicella infection (chicken pox) in children, and only Varivax is taxed in accordance with the program's funding scheme. *Id*. These facts, however, would not be readily apparent to someone who looked to the Vaccine Table as the definitive baseline for coverage. Indeed, neither the government nor the special master was immediately cognizant of the disparate treatment of the chicken pox and shingles vaccines. The medical records submitted shortly after Ms. Scanlon's petition provided no indicia that coverage was lacking. And early on, at the initial conference held 46 days after filing, both the special master and the government seemed to assume that Ms. Scanlon had submitted a potentially valid case that might be susceptible to settlement. *See* Hr'g Tr. 5:5 to 7:16 (May 13, 2013), ECF No. 36. Nothing was then said to indicate that the Vaccine Table might not actually mean what it appeared plainly to state. That possibility was argued on September 5, 2013, 161 days after the petition was submitted, when the government filed its motion to dismiss.

      In sum, it was not unreasonable for Ms. Scanlon to believe that the term "varicella vaccine" logically included both types of vaccines containing and preventing illness from varicella zoster virus. *See Scanlon*, 114 Fed. Cl. at 142 (noting that chicken pox and shingles are caused by the same virus but are manifestly different diseases). In fact, her own medical records do not consistently distinguish between "varicella vaccine" and "varicella zoster vaccine." *See* Pet'r's Mot. at 6 (citing pet'r's submitted medical records). It was only by considering information beyond the plain language of the Vaccine Table that the special master and then the court arrived at an interpretation of the listing for "varicella vaccine," which varied from the plain meaning.

      Moreover, no prior judicial decision had denied compensation for petitions related to Zostavax, although three decisions had been issued to that effect by one specific special master. *See Nilsen v. Secretary of the Dep't of Health & Human Servs.*, No. 10-110V, 2010 WL 1753471 (Fed. Cl. Spec. Mstr. Apr. 6, 2010); *Doe/44 v. Secretary of the Dep't of Health & Human Servs.*, No.[redacted]V, 2009 WL 3124758 (Fed. Cl. Spec. Mstr. Sept. 25, 2009); *Doe/47 v. Secretary of the Dep't of Health & Human Servs.*, No.[redacted]V, 2009 WL 3416368 (Fed. Cl. Spec. Mstr. Sept. 10, 2009). These decisions did not bind other special masters, *see Hanlon v. Secretary of the Dep't of Health & Humans Servs.*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999), and they certainly did not bind the court. Given the plain text of the Table, it was

not unreasonable for petitioner, even in the face of the contrary decisions from the one special master, to seek a more straightforward interpretation of "varicella vaccine" as used in the Vaccine Injury Table.  *Cf. Davis*, 105 Fed. Cl. at 637 (noting that two special masters can reasonably come to different conclusions on very similar sets of facts).

Third, petitioner's counsel emphasizes that Ms. Scanlon came to him for legal assistance with a possible claim four days prior to an arguable expiration of the three-year statute of limitations.  *See* Pet'r's Mot. at 7.[6]  Counsel filed the petition on the next day, March 28, 2013.  This temporal aspect of the circumstances weighs heavily in favor of the reasonableness of filing the petition, taking into account the facial applicability of the pertinent entry on the Vaccine Table.  The special master's critique of petitioner's counsel for not conducting "statutory research" until seven days after filing the petition, *Scanlon*, 2014 WL 1286563, at *3, is not well taken.  Besides the broadly encompassing nature of the listing on the Vaccine Injury Table, both the special master and the government's counsel took months to recognize that the Table listing might not be what it first seemed.

## CONCLUSION

For the reasons stated, Ms. Scanlon's motion for review is GRANTED, and the special master's decision is VACATED.  The case is REMANDED to the special master for a period of 90 days to consider and then make an award of attorneys' fees and costs to Ms. Scanlon's counsel.  *See* 42 U.S.C. § 300aa-12(e)(2).

It is so ORDERED.

                                                                  s/ Charles F. Lettow  
                                                                   Charles F. Lettow  
                                                                   Judge

---

[6]Ms. Scanlon received her vaccination on April 1, 2010, although it is not apparent that she then immediately experienced "the first medically recognized symptom or manifestation of onset of the injury claimed," the trigger by which the Vaccine Act's limitations period begins to run.  *Cloer v. Secretary of Health & Human Servs.*, 654 F.3d 1322, 1324-25 (Fed. Cir. 2011) (en banc), *cert. denied*, 566 U.S. __, 132 S. Ct. 1908 (2012).

8